UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: J(2) |
| Applies to:<br>*No. 19-10295* | * | JUDGE BARBIER |
| | * | MAG. JUDGE CURRAULT |

### ORDER & REASONS
[As to Billy F. Larkin/Hotel Security Specialists, LLC]

The referenced member case was filed by Billy Larkin, a prisoner who is currently incarcerated at Warren Correction Institution in North Carolina. Larkin is pro se. He was granted permission to proceed in forma pauperis ("IFP"); therefore, his case is subject to the Prisoner Litigation Reform Act, 28 U.S.C. § 1915. That statute requires that a court "shall dismiss . . . at any time" an IFP case that "is frivolous" or "fails to state a claim on which relief may be granted." *Id.* § 1915(e)(2)(B). As explained below, Larkin's suit is both frivolous and fails to state a claim.

### I.

The Gulf Coast Claims Facility ("GCCF") was established in August of 2010 to receive, process, determine, and pay (or reject) claims arising from the DEEPWATER HORIZON/Macondo Well oil spill in the Gulf of Mexico. The GCCF ended in 2012 when BP and a class of plaintiffs agreed to the *Deepwater Horizon* Economic and Property Damages Settlement Agreement ("Settlement," Rec. Doc. 6430-1). The Settlement is administered by the Court Supervised Settlement Program ("CSSP"). This Court retains continuing and exclusive jurisdiction over the Settlement

(including its administration, interpretation, and enforcement), the CSSP, and the Settlement's class members. (*See* Settlement § 18.1; Order and Judgment of Dec. 21, 2012 ¶ 17, Rec. Doc. 8139).

Billy Larkin filed claims with both the GCCF and the CSSP on behalf of a business he allegedly owned and operated, Hotel Security Specialists, LLC ("HSS").[1] As to Larkin's GCCF claim, the GCCF issued a deficiency letter on June 15, 2011 that stated it could not take any action because Larkin had not provided certain supporting documentation. Specifically, Larkin needed to provide documents that would allow the GCCF to determine (1) the location where HSS conducted business, (2) HSS's revenues from 2008 up until the oil spill began (e.g., tax returns), and (3) HSS's revenues in 2010 after the oil spill. The GCCF required Larkin to submit this documentation within thirty days. Larkin provided no documents to the GCCF,[2] and on August 2, 2011 the GCCF denied Larkin's claim because of the uncured deficiency.

Before discussing Larkin's claims with the CSSP, it is helpful to review some of the CSSP's claims-filing procedure. For the CSSP to process a claim, a claimant must file a registration form, a claim form, and certain supporting documentation. The registration form asks for identifying and contact information regarding the claimant. When the claimant is a business,[3] the registration form requests, among

---

[1] Larkin's claim file with the GCCF and the CSSP are not in the Court's public record. However, pursuant to the Court's continuing jurisdiction over the CSSP, the Court has access to and has reviewed Larkin's file in the CSSP's online portal, which also contains documents from the GCCF.

[2] In fact, Larkin's file contains an email he sent to the GCCF on June 8, 2011 that states, "[HSS] has no tax returns to comply with the above-styled claim. A private listing of clients and the hotels is available to view, only in a court of law, if such proves the proper venue for this matter." (CSSP Doc. ID 14250481).

[3] HHS, a business, is the "claimant" in the CSSP. For ease of reading, however, this Order will frequently refer to "Larkin's claim," etc.

other things, the identity and address of both the business and the "Authorized Business Representative." Additionally, if the claimant is a dissolved business, the registration form requests the identity and address of the "Current Holder of Rights to the claimant's claim."

Between 2014 and 2015, Larkin mailed three registration forms and two claim forms to the CSSP. Larkin sent the first registration form in April 2014. For HSS's business address, Larkin provided an address in Savannah, Georgia. For the Authorized Business Representative and the Current Holder of Rights, Larkin identified himself and provided the address of a prison in Marion, North Carolina where he was then incarcerated.

About a month later, in May 2014, Larkin mailed a second registration form along with a claim form for a "Failed Business Economic Claim" to the CSSP. As with the previous registration form, this registration form listed the Savannah address as HSS's business address and the Marion prison as the address for the Current Holder of Rights. However, the May 2014 registration form did not provide any information about the Authorized Business Representative. The claim form asks for only one address: the business address. Larkin provided the Savannah, Georgia address here.

Larkin submitted virtually no supporting documentation with his May 2014 claim form. The Court has reviewed Larkin's claim file and found only one document that could be viewed as a supporting document: a print out from the Georgia Secretary of State's website that states HSS was dissolved in September 2010. Larkin's claim file also contains a letter from Larkin to the CSSP dated May 14, 2014

where he states that the documents supporting his claim were seized by the Wrightsville Beach Police Department on December 19, 2010, apparently (as best the Court can glean from one page of a sixteen-page police report Larkin included with his letter) as part of its investigation into the theft of sterling silver flatware, cufflinks, and other property.[4]

In April 2015, the CSSP issued an Incompleteness Notice on Larkin's claim. The Notice listed nine categories of documents that Larkin needed to provide. In May 2015, the CSSP issued a Follow-Up Incompleteness Notice stating that the CSSP had not received any of the outstanding documents. On July 2, 2015, the CSSP issued an Incompleteness Denial Notice, which denied Larkin's claim because he had not provided the required supporting documentation. The CSSP mailed each of the three notices to the Savannah, Georgia address. Larkin had thirty days to request reconsideration from the incompleteness denial. He did not, and the CSSP closed his claim.

In May 2015, Larkin mailed a third registration form and a second Failed Business Economic Loss claim form to the CSSP. This registration form provided no address for either the business address or for the Current Holder of Rights address. For the Authorized Business Representative's address, Larkin provided a new address: a prison located in Nashville, North Carolina. As with the first claim form,

---

[4] In his complaint filed in this Court, Larkin states "[o]n May 14, 2014, my former accountant at Fort Bragg mailed a CD disc to the claim center that contained the documentation required to file a failed business economic loss claim." (No. 19-10295, Rec. Doc. 1 ¶ 6). Neither the CD nor the documentation purportedly stored on it appears in the CSSP's claim portal or in this Court's record. Larkin's complaint makes no reference to his documents being seized by the police.

the second claim form gives the Savannah, Georgia address as HSS's business address.

Larkin provided no supporting documentation with his second CSSP claim. The CSSP issued an Incompleteness Notice in September 2015, a Follow-Up Incompleteness Notice in October 2015, and an Incompleteness Denial Notice in December 2015. As before, the CSSP mailed each of these notices to the Savannah, Georgia address. Larkin did not seek reconsideration from this denial, and his claim was closed in January 2016. At this point, Larkin had no claims remaining in the CSSP.

## II.

On May 7, 2019, Larkin filed a lawsuit with this Court against the CSSP's Claims Administrator and BP. (Civ. A. No. 19-10295). Larkin complains about the fact that the CSSP sent the denial notices to the Savannah, Georgia address, as opposed to the prisons where Larkin was incarcerated. Larkin asserts this constitutes "gross neglect" by the CSSP that deprived him of the opportunity to seek reconsideration of the two incompleteness denials. (No. 19-10295, Rec. Doc. 1 ¶¶ 17-18). Larkin further alleges that the CSSP "intentionally discriminated against the plaintiff who is an incarcerated minority and disparate impact is present in the statistical data used to prove a claim under the Deepwater Horizon Economic and [Property] Damages Settlement Program, after BP showed its disdain for class members its executives termed 'underhanded claimants.'" (*Id.* ¶ 19 (emphasis omitted)). Larkin's complaint demands the following relief: that the Court (1) suspend

the Settlement and/or the CSSP, (2) order the U.S. Department of Justice and other federal agencies "to conduct a case-by-case assessment of all class member[s] with denied claim[s] as subject to disparate impact," and (3) require the CSSP and BP to pay Larkin "unspecified monetary damages for the intentional infliction of emotional distress." (*Id.* pp.7-8). In subsequent filings, Larkin demands $15 million "tax free" from BP (Rec. Doc. 25989) and $101 million "tax free" from the CSSP. (Rec. Doc. 26385).

Larkin's lawsuit was consolidated with this multidistrict litigation and stayed. Since that time, Larkin has filed multiple motions with the Court.[5] The Court has ruled on most of these,[6] while others remain stayed and pending pursuant to Pretrial Order No. 15 (Rec. Doc. 676). The Court addresses Larkin's case and remaining motions here.

### III.

#### A. Larkin's Claims Against the CSSP

As mentioned, this Court maintains continuing and exclusive jurisdiction over the Settlement, the CSSP, and Settlement's class members. Moreover, the Settlement states that "[a]ny disputes or controversies arising out of or related to the interpretation, enforcement or implementation of the [Settlement] . . . ***shall*** be made ***by motion*** to the Court." (Settlement § 18.1 (emphasis added)). Consequently, Larkin cannot file a civil action against the CSSP or its Administrator.

---

[5] *See* Rec. Docs. 25853, 25912, 25913, 25988, 25989, 25992, 26122, 26154, 26193, 26227, 26326, 26364, 26385, 26474, 26630.
[6] *See* Rec. Docs 25910 (denying Rec. Doc. 25853), 26198 (denying Rec. Docs. 25912, 25989, 25913, 25992, 26193), 26298 (denying Rec. Docs. 26122, 26227), 26381 (denying Rec. Doc. 26326), 26483 (denying Rec. Doc. 26474).

The Court will, however, treat Larkin's lawsuit as a motion "related to the interpretation, enforcement, or implementation" of the Settlement. Nevertheless, the motion is meritless.

Larkin complains about the fact that the CSSP sent the incompleteness notices to the Savannah, Georgia address as opposed to his prison addresses. First, the Court notes that the CSSP sent the notices to an address that Larkin himself provided in his first two registration forms and both his claim forms. Furthermore, the Court, pursuant to its supervisory authority, has inquired with the CSSP about its notice procedures. The CSSP informs the Court that when a claimant is a business that is not represented by an attorney and does not use the online portal, as was the case here, its standard practice is to mail notices to the business address provided in the registration form. Thus, the CSSP appears to have complied with its usual practice for mailing notices.

But even if the CSSP "should have" sent the notices to Larkin's prison addresses, it does not follow that the CSSP's error—if it was an error—is evidence of discrimination against prisoners or minorities or an act of gross negligence. The most that could be said of this is that it was a processing mistake that occurred in the context of a settlement program that received 391,000 claim forms and 291,000 registration forms from 262,000 unique claimants. *See* CSSP Public Statistics, Dec. 14, 2020.[7] Such does not warrant this Court's intervention. *Cf. In re Deepwater Horizon*, 641 F. App'x 405, 408-09 (5th Cir. 2016) ("[T]he supervisory role of the

---

[7] *Available at* http://www.deepwaterhorizoneconomicsettlement.com/docs/statistics.pdf.

district court is limited to discretionary review of the outcomes of internal appeals conducted by the Settlement Program itself . . ., and to 'enforce[ment], implement[ation], and interpret[ation]' of the Settlement Agreement . . . . If the discretionary nature of the district court's review is to have any meaning, the court must be able to avoid appeals like this one which involve no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise the correctness of a discretionary administrative decision in the facts of a single claimant's case."). Furthermore, the CSSP has already been subject to several external audits and investigations (*see* Rec. Docs. 13716, 13720, 13718, 13717, 11287), and it has been under this Court's continuing supervision. The Court will not suspend the CSSP or order the investigation requested by Larkin. Larkin's demands for monetary damages are similarly groundless.

Perhaps the only real question is whether the Court should order the CSSP to give Larkin another opportunity to submit the required supporting documentation. The Court finds Larkin is not entitled to this relief for the following reasons: (1) As discussed, the CSSP arguably sent the notices to the "proper" address per its usual practices. (2) While Larkin complains that he was deprived of the opportunity to seek reconsideration, he does not actually request that he be allowed to provide the required supporting documentation. In other words, Larkin does not actually request this relief. (3) Between Larkin's one claim with the GCCF, two claims with the CSSP, and numerous filings in this Court, the only supporting documentation he ever provided is the printout from the Georgia Secretary of State's website showing HSS

was dissolved in 2010—far short of what is required to prove a Failed Business claim. (*See, e.g.,* Settlement, Ex. 6 § IV, Rec. Doc. 6430-14). When considered alongside the fact that Larkin does not request an extension to submit the documents, the natural inference is that Larkin simply cannot produce the required supporting documentation, perhaps because this documentation never existed. (4) There is a serious question as to whether Larkin or HSS is even a class member, given that all of the addresses Larkin provided are outside the geographic class boundary. (*See* Settlement § 1). (5) Finally, Larkin did not file this lawsuit/motion until May of 2019, over three years after the CSSP denied and closed his last claim. The CSSP has been operating since 2012 and has processed mountains of claims. It has reached the end of processing. If the Court were to instruct the CSSP to reopen Larkin's claim, what other floodgates would it be opening? This is not the time to reopen claims long since closed. The CSSP must come to an end.

      B.     **Larkin's Claims Against BP**

BP is a "release party" under the Settlement. (Settlement § 10). Therefore, if Larkin/HSS is a class member, the claims against BP are barred by the Settlement's class-wide release. If Larkin/HSS is not a class member, then the lawsuit against BP was not timely filed in compliance with Pretrial Order No. 60. (*See* Rec. Doc. 20996) (declaring time-barred all B1 bundle claims not identified in the July 14, 2016 PTO 60 Compliance Order).

## IV.

Larkin is a prisoner who is proceeding IFP. Consequently, he is subject to the

Prisoner Litigation Reform Act, 28 U.S.C. § 1915. That statute provides, in pertinent part, that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous . . . [or] (ii) fails to state claim on which relief may be granted." *Id.* § 1915(e)(2)(B). For the reasons set forth above, the Court finds that Larkin's lawsuit is both frivolous and fails to state a claim upon which relief may be granted. Accordingly, the Court will dismiss case no. 19-10295. For similar reasons, the Court will deny Larkin's pending motions.

Accordingly,

IT IS ORDERED that all claims in *Billy F. Larkin, et al. v. Patrick Juneau, et al.* (No. 19-10295) are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Larkin's remaining motions (Rec. Docs. 25988, 26154, 26364, 26385, 26630) are DENIED.

New Orleans, Louisiana, this 16th day of December, 2020.

_____
United States District Judge

**Note to Clerk: File in 10-md-2179 and 19-10295. Mail a copy to Billy F. Larkin.**